# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK
## MANHATTAN COURTHOUSE

| | |
|---|---|
| Elba Poppiti, individually and on behalf of all others similarly situated, | 1:23-cv-03914 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Rite Aid Corporation, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Rite Aid Corporation ("Defendant") sells "Oral Care Dry Mouth Discs" under its Rite Aid brand ("Product").



2. Dry mouth or xerostomia is hypofunction of the salivary glands.

3. The result is that the mouth is unable to produce saliva, an extracellular bodily fluid

comprised of 99 percent water.

4. This condition and is caused by (1) autoimmune diseases, (2) side effects of multiple medications, (3) head and neck irradiation and (4) systemic cancer therapy.[1]

5. Saliva plays a significant role in oral health, by (1) washing away food and debris from teeth and gums, (2) neutralizing acids and (3) providing high levels of calcium, fluoride and phosphate ions at the tooth surface.

6. The absence of saliva or xerostomia significantly increases the risk of dental caries, demineralization, tooth sensitivity, dental erosion, candidiasis, and other oral diseases.

7. To appeal to the one-quarter of the population suffering from this condition, the label describes how the Product "adheres to mouth to provide lasting moisture," "soothes dry tissues" and "promotes a healthy mouth" while "freshen[ing] breath," with a background of blue splashing water.

8. This type of oral moisturizer is intended to linger in the mouth as long as possible to relieve dry mouth symptoms.

9. However, because those affected by xerostomia do not produce enough saliva to dilute it, unless such products are formulated to have an acidity level exceeding 6.7 pH, their use will contribute to demineralization, dental erosion, sensitivity, and caries.

10. According to independent testing, the Product is highly acidic, with a pH of 5.1, significantly less than the critical pH of enamel or root dentin, between 6 and 6.9.[2]

---

[1] Estimates are that 63% of the 200 most common medications have a xerogenic effect, resulting in reduced salivary flow rates.

[2] Alex J. Delgado and Vilhelm G. Olafsson. *Acidic oral moisturizers with pH below 6.7 may be harmful to teeth depending on formulation: a short report*, Clinical, Cosmetic and Investigational Dentistry (2017): 81-83; Alex J. Delgado et al., *pH and erosive potential of commonly used oral moisturizers*, Journal of Prosthodontics 25.1 (2016): 39-43. Laboratory testing based on titratable acidity using a pH meter, pH indicator and gravimetric analysis.

11. The result is that the tooth structure begins to erode, confirmed by one study showing use of the Product caused 1.1% tooth loss.[3]

12. In light of the Product's acidity, its representation as beneficial to oral health and able to alleviate symptoms of dry mouth is misleading.

13. This is because it fails to inform purchasers of the likelihood of demineralization, dental erosion, greater tooth sensitivity and higher incidences of dental caries.

14. Dry mouth lozenges or discs exist which do not contribute to tooth loss and dental caries because they have pH levels of 8.0 or greater.

15. The Product unlawfully claims to "mitigate … disease" through its effects on salivary gland disorders using lay terminology, "to provide lasting moisture." 21 C.F.R. § 101.93(g)(2)(ii).

Jurisdiction and Venue

16. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

17. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

18. Plaintiff is a citizen of New York.

19. Defendant is a citizen of Pennsylvania.

20. The class of persons Plaintiff seek to represent includes persons who are citizens of different states from which Defendant is a citizen.

21. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here, to the tens of millions of Americans

---

[3] Alex J. Delgado et al., Potential Erosive Assessment of Dry Mouth Lozenges and Tablets on Dentin, #0419, University of Florida College of Dentistry (laboratory testing based on titratable acidity using a pH meter, pH indicator and gravimetric analysis).

who suffer from dry mouth, in thousands of Rite Aid stores and online, in the States Plaintiff seeks to represent.

22. The members of the classes Plaintiff seek to represent are more than 100, because the Product has been sold with the representations described here from thousands of locations including grocery stores, dollar stores, drug stores, convenience stores, big box stores, and/or online, across the States covered by the proposed classes.

23. Venue is in this District with assignment to the Manhattan Courthouse because Plaintiff resides in Bronx County and a substantial part of the events or omissions giving rise to these claims occurred in Bronx County, including Plaintiff's purchase and use of the Product, reliance on the representations, and/or subsequent awareness they were false and misleading.

## Parties

24. Plaintiff Elba Poppiti is a citizen of Bronx, Bronx County, New York.

25. Defendant Rite Aid Corporation is a Delaware corporation with a principal place of business in Camp Hill, Pennsylvania, Cumberland County.

26. Defendant is one of the largest and most trusted retailers in the country for prescriptions, OTC items, food, household goods and other sundries.

27. Defendant even offers medical services such as necessary vaccines to customers, often at no charge.

28. Since people trust Defendant to dispense medication prescribed by their doctors, they carry that trust over to other products which satisfy other essential needs, like OTC products.

29. While Defendant sells leading national brands, they also sold a large number of OTC products under their private label Rite Aid brand.

30. Private label products are made by third-party manufacturers and sold under the

name of the retailer, or its sub-brands.

31. Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to their national brand counterparts.

32. Products under the Rite Aid brand have an industry-wide reputation for quality and value.

33. In releasing products under the Rite Aid brand, Defendant's foremost criteria was to have high-quality products that were equal to or better than the national brands.

34. Defendant is able to get national brands to produce its private label items due its loyal customer base and tough negotiating.

35. That Rite Aid-branded products met this high bar was proven by focus groups, which rated them above the name brand equivalent.

36. These private label products generate higher profits for Rite Aid because national brands spend significantly more on marketing, contributing to their higher prices.

37. A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands [like Rite Aid] are good alternatives to national brands, and more than 60 percent consider them to be just as good."

38. Private label products under the Rite Aid brand benefit by their association with consumers' appreciation for the Rite Aid brand as a whole.

39. The development of private label items is a growth area for Rite Aid, as they select only top suppliers to develop and produce Rite Aid products.

40. The Product is available to consumers in this District from Defendant's retail stores and website.

41. Plaintiff purchased the Product on one or more occasions within the statutes of

limitations for each cause of action alleged, at Rite Aid locations in the Bronx, between June 2020 and May 2023, and/or among other times.

42. Plaintiff expected the Product would be beneficial to oral health by alleviating the symptoms of dry mouth by stimulating saliva production and mitigate salivary gland disorders because she read the words, "adheres to mouth to provide lasting moisture," "soothes dry tissues" and "promotes a healthy mouth" while "freshen[ing] breath," with a background of blue splashing water.

43. Plaintiff was not aware that because of the Product's acidity, it was detrimental to oral health by contributing to demineralization, dental erosion, sensitivity, and caries and that it was not authorized to claim to mitigate salivary gland disorders.

44. As a result of the false and misleading representations, the Product is sold at premium price, approximately not less than $7.99 per 40 discs, excluding tax and sales.

45. Plaintiff bought the Product at or exceeding the above-referenced price.

46. Plaintiff paid more for the Product, would have paid less or not have purchased it had she known the representations and omissions were false and misleading.

47. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

48. Plaintiff chose between this Product and others represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

Class Allegations

49. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in

> the States of Utah, North Dakota, Kansas, Mississippi, Arkansas, Alaska and South Carolina who purchased the Product during the statutes of limitations for each cause of action alleged.

50. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

51. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

52. Plaintiff is an adequate representative because her interests do not conflict with other members.

53. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

54. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

55. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

<u>New York General Business Law ("GBL") §§ 349 and 350</u>
<u>(New York Class)</u>

56. Plaintiff incorporates by reference all preceding paragraphs.

57. Plaintiff purchased the Product to be beneficial to oral health by alleviating the symptoms of dry mouth by stimulating saliva production and mitigate salivary gland disorders even though it failed to inform purchasers of the likelihood of demineralization, dental erosion, greater sensitivity, and higher incidences of dental caries.

58. Plaintiff would not have purchased the Product or paid as much if the true facts had

been known, suffering damages.

### Violation of State Consumer Fraud Acts
### (Consumer Fraud Multi-State Class)

59.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

60.     The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

61.     Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

### Breaches of Express Warranty,
### Implied Warranty of Merchantability/Fitness for a Particular Purpose
### and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

62.     The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it would improve oral health by alleviating the symptoms of dry mouth and mitigate salivary gland disorders even though it failed to inform purchasers of the likelihood of demineralization, dental erosion, greater sensitivity, and higher incidences of dental caries.

63.     Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

64.     Defendant knew the product attributes that potential customers like Plaintiff were seeking, including dry mouth relief, increased saliva production, and moisturizing, and developed its marketing and labeling to directly meet their needs and desires.

65. The representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it would improve oral health and did not expect it would be formulated to negatively affect oral health.

66. Defendant's representations affirmed and promised that the Product would improve oral health and not negatively affect oral health.

67. Defendant described the Product so Plaintiff believed that it would improve oral health and did not expect it would be formulated to negatively affect oral health, which became part of the basis of the bargain that it would conform to its affirmations and promises.

68. Defendant had a duty to disclose and/or provide non-deceptive promises, descriptions and marketing of the Product.

69. This duty is based on Defendant's outsized role in the market for OTC oral care products and custodian of the Rite Aid brand, which contains numerous products that have helped alleviate oral conditions for decades.

70. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

71. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

72. Defendant received notice and should have been aware of these issues due to complaints by consumers and third-parties, such as Greg Grillo, D.D.S., and including regulators and competitors, to its main offices and through online forums.

73. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

74. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the

promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it would improve oral health and did not expect it would be formulated to negatively affect oral health.

75. The Product was not merchantable because Defendant had reason to know the particular purpose for which it was bought by Plaintiff, because she expected it would improve oral health and did not expect it would be formulated to negatively affect oral health, and she relied on its skill and judgment to select or furnish such suitable product.

### Fraud

76. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it would improve oral health and did not expect it would be formulated to negatively affect oral health.

77. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity or deception, through statement and omission, of the representations.

### Unjust Enrichment

78. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

   1. Certifying Plaintiff as representative and the undersigned as counsel for the classes;

   2. Awarding monetary, statutory and/or punitive damages and interest;

   3. Awarding costs and expenses, including reasonable attorney and expert fees; and

4. Other and further relief as the Court deems just and proper.

Dated: May 10, 2023

                                      Respectfully submitted,

                                      /s/ Spencer Sheehan
                                      Sheehan & Associates, P.C.
                                      60 Cuttermill Rd Ste 412
                                      Great Neck NY 11021
                                      (516) 268-7080
                                      spencer@spencersheehan.com